UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LAKELAND OFFICE SYSTEMS, INC. and LAKELAND FINANCIAL SERVICES, LLC.,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| v. ) ) | Case No. 16-CV-0273-CVE-PJC |
| **SURREY VACATION RESORTS, INC. d/b/a Grande Crowne Resorts and/or Dynamic Printing and/or Capital Resorts, CAPITAL RESORTS GROUP, LLC d/b/a Grande Crowne Resorts, and CJ PERME,** ) ) ) ) ) ) ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court is Capital Resorts Group, LLC's Motion to Dismiss Claims for Lack of Personal Jurisdiction and Brief in Support Thereof (Dkt. # 19). Defendant Capital Resorts Group, LLC (CRG) argues that it is a Delaware limited liability company with its principal place of business in St. Petersburg, Florida and that it is not subject to personal jurisdiction in Oklahoma. Dkt. # 19. Plaintiffs Lakeland Office Systems, Inc. and Lakeland Financial Services, LLC (collectively referred to as Lakeland) argue that CRG knowingly used the services of an Oklahoma-based business and sent payments to Oklahoma, and Lakeland argues that CRG is the successor-in-interest to an entity that entered into a contract with Lakeland that included an Oklahoma forum selection clause. Dkt. # 22, at 1-2.

**I.**

Lakeland asserts that it is in the business of leasing copiers and related supplies, and it typically enters a "Cost Per Page Agreement" with its customers. Dkt. # 12, at 2. Surrey Vacation Resorts, Inc. (Surrey) entered into numerous cost per page agreements with Lakeland between 2012

and 2014, and the agreements were personally guaranteed by C.J. Perme. Id. Lakeland leased copiers to Surrey at locations in Mississippi, Maine, Florida, Missouri, South Carolina, Wisconsin, and Tennessee. Id. All payments under the agreements were to be sent to Lakeland at its office in Miami, Oklahoma. The agreements state that Oklahoma law shall govern any dispute between the parties to the agreement and that lawsuit arising out of a dispute shall be filed in Ottawa County District Court. Dkt. # 12-1, at 5. Each agreement also contains a provision stating that the customer shall not pledge or assign the agreement to a third party. Id. at 5.

Lakeland claims that Surrey began to miss payments in 2015 and Lakeland communicated with Surrey employees John Kesler, Matthew Spangler, Chad Ray, and Alex Hodges in an attempt to collect overdue payments. Dkt. # 12, at 3. Lakeland alleges that it "learned that Surrey was being taken over by CRG in a transaction that Lakeland was led to believe was a merger," and Lakeland continued to service copiers pursuant to its agreements with Surrey. Id. Lakeland received some payments from CRG and the checks issued by CRG identified Lakeland as Vendor # 30768 in CRG's payment system. Id. at 3-4. In December 2015, Lakeland had not received payment for the full amount of its outstanding invoices pursuant to its agreements with Surrey, and it threatened to place the account on hold. On February 17, 2016, CRG told Lakeland to pick up the copiers from the various locations formerly owned by Surrey, and Lakeland responded that the agreements were non-cancellable and it demanded payment of all outstanding invoices. Id. at 4-5.

Lakeland filed this case in Ottawa County District Court alleging that Surrey leased equipment and had a service agreement for the leased equipment, and Lakeland claims that Surrey defaulted on the leases. Dkt. # 2, at 6. The case was removed to this Court based on diversity jurisdiction, and Lakeland filed an amended complaint (Dkt. # 12) alleging claims of breach of

2

contract, unjust enrichment, fraudulent transfer, and fraud. Lakeland alleges that CRG is liable to Lakeland because CRG is the successor in interest to Surrey, and Lakeland claims that CRG is liable under Surrey's agreements with Lakeland.

CRG is a Delaware limited liability company with its principal place of business in St. Petersburg, Florida. CRG owns some assets that were previously owned by Surrey, but there was no merger between CRG and Surrey, and CRG did not assume the liabilities of Surrey. Dkt. # 19, at 10-11. CRG does not maintain any presence in Oklahoma and it is not registered to conduct business in Oklahoma. Id. at 10. CRG admits that it used copiers at properties that were previously owned by Surrey and it paid Lakeland $5,031.81 for the use of the copiers, but it did not assume Surrey's obligations under any agreement between Surrey and Lakeland. Id. at 11. None of the copiers used by CRG were located in the state of Oklahoma. Id.

## II.

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendants. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must

3

be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. Id.

### III.

CRG argues that it is not subject to personal jurisdiction in Oklahoma. CRG claims that it does not conduct business in Oklahoma and it does not have continuous and systematic contacts with the forum state. Dkt. # 19, at 6-7. As to specific personal jurisdiction, CRG states that it purchased certain assets belonging to Surrey, but CRG was not the successor-in-interest to Surrey and it did not acquire any assets from Surrey that were located in Oklahoma. Id. at 8. Lakeland argues that CRG "merged with or otherwise acquired assets . . . from [Surrey]" and CRG knowingly used the services of an Oklahoma business, and Lakeland asserts that the Court has specific personal jurisdiction over CRG. Dkt. # 22, at 7-8.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. at 1247 (quoting Burger King Corp., 471 U.S. at 472). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

General jurisdiction exists where a party's contacts with a state are so "'continuous and systematic' as to render [the party] essentially at home in the forum [s]tate." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). Because general jurisdiction is unrelated to the events giving rise to the suit, "courts impose a . . . stringent minimum contacts test." OMI Holdings, Inc., 149 F.3d at 1091 (citations omitted). General jurisdiction existed where a defendant maintained an office and company files in

5

the forum state, conducted numerous business activities in the state, distributed salary checks from in-state bank accounts, and engaged an in-state bank as a transfer agent. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952). On the other hand, general jurisdiction did not exist where the defendant sent an officer to the state for a negotiation, purchased equipment and training from an in-state business, sent personnel for training in the state, and accepted checks drawn from an in-state bank account. Helicopteros, 466 U.S. at 416.

The Court finds that it does not have general personal jurisdiction over CRG, because CRG's contacts with Oklahoma are not so continuous and systematic that it could have known that it could be subject to suit in Oklahoma. CRG is a Delaware limited liability company with its principal place of business in St. Petersburg, Florida, and it does not maintain any type of presence in Oklahoma. CRG is not registered with the Oklahoma Secretary of State and it does not conduct business in Oklahoma. CRG acquired some assets that formerly belonged to Surrey, but none of those assets are located in Oklahoma. Lakeland argues that its copiers were present at certain locations acquired by CRG and CRG continued to use the copiers, and Lakeland states that CRG should have known that the copiers were provided by an Oklahoma business. However, this does not show that CRG had continuous and systematic contacts with Oklahoma, and there is no evidence that would support a finding that CRG is subject to general personal jurisdiction in Oklahoma.

For a court to exercise specific jurisdiction over a nonresident defendant, a plaintiff must show that "the defendant has 'purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state'" and that "the litigation results from alleged injuries that arise out of or relate to those activities." Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1160 (10th Cir. 2010). The existence of an agreement or contract, standing alone, may

not be enough to justify the assertion of personal jurisdiction over a non-resident defendant, but "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011). In a contract case, a court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir. 2008). The mere presence of one of the contracting parties in the forum state may not be enough to support the exercise of personal jurisdiction over a non-resident defendant, and the "contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state." TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1292 (10th Cir. 2007).

Lakeland argues that the Court has specific jurisdiction over CRG, because CRG "merged with or otherwise acquired assets . . . from Surrey" and CRG communicated with Lakeland concerning the use of copiers located on property formerly owned by Surrey. Dkt. # 22, at 7. Lakeland states that Surrey began to miss payments in 2015 and it communicated with Surrey employees in an attempt to collect overdue payments. Dkt. # 22-1, at 3. Lakeland claims that it learned through "informal channels . . . that Surrey was being taken over by CRG in a transaction that Lakeland understood to be a merger." Id. There is no dispute that copiers belonging to Lakeland remained on properties formerly owned by Surrey and that CRG used the copiers. There is also no dispute that CRG sent two checks to Lakeland for a total of $5,031.81 and that the checks were sent to Lakeland in Oklahoma. Dkt. # 19, at 11. The checks contain a vendor number created by CRG and Lakeland asserts that this constitutes an acknowledgment that CRG would have an

7

ongoing business relationship with Lakeland. Dkt. # 22, at 7. CRG and Lakeland exchanged e-mails concerning outstanding invoices and Lakeland claims that CRG's employees represented that CRG would stay current on invoices submitted by Lakeland. Id.

Lakeland's argument is based on is primarily based on its assumption that CRG assumed responsibility for Surrey's contracts with Lakeland after CRG acquired assets from Surrey, but the evidence submitted by the parties does not support this assumption. The plain language of Lakeland's contracts with Surrey state that Surrey "SHALL NOT ASSIGN OR PLEDGE THIS AGREEMENT NOR SHALL CUSTOMER SUBLET OR LEND ANY ITEM OF EQUIPMENT." Dkt. # 12-1, at 7. Even if there had been a merger between Surrey and CRG, the contract clearly states that Surrey could not assign the contract for copier services to CRG and this supports a finding that Lakeland did not intend to create a contractual relationship with any party other than Surrey. Lakeland claims that it believed that a merger between CRG and Surrey took place, but the evidence submitted by CRG shows that no merger actually took place and that CRG did not assume any liabilities of Surrey when CRG acquired certain properties from Surrey. Dkt. # 19, at 10-11. CRG admits that copiers owned by Lakeland were present on properties formerly owned by Surrey and that it paid Lakeland for the use of those copiers, but CRG advised Lakeland to pick up the copiers and it did not enter into a contract with Lakeland. Dkt. # 19, at 11; Dkt. # 22-1, at 4. The Court does not find that Lakeland and CRG had a contractual relationship or that CRG engaged in conduct suggesting that parties would have a long-term business relationship.

The Court will consider whether the actual contacts between Lakeland and CRG were sufficient to establish specific personal jurisdiction over CRG. The evidence submitted by Lakeland shows that Lakeland submitted invoices for copying services after CRG acquired certain assets from

8

Surrey, and Lakeland communicated with former employees of Surrey. One of those employees, Matthew Spangler, represented that he was not working with CRG as to future obligations, but he was "simply on the backside of [Surrey], cleaning up what is owed to different vendors from them." Dkt. # 22-4, at 2. Lakeland continued to seek payment from CRG and it threatened to put the account on hold, and Spangler responded that he would try to get answers to Lakeland's questions about an ongoing relationship with CRG. Dkt. # 22-6, at 2. In February 2016, CRG told Lakeland to pick up its copiers and this was a clear statement that it did not intend to have an ongoing business relationship with Lakeland. CRG did sent two checks to Lakeland at Lakeland's office in Oklahoma and the checks did identify Lakeland using a vendor number created by CRG. CRG states that the vendor numbers were created for internal accounting purposes and the creation of a vendor number does not by itself show that CRG had a contractual relationship with an entity. Dkt. # 26, at 3.

The evidence does not show that CRG reached out to Lakeland to conduct business with an Oklahoma entity or that CRG purposefully availed itself of the privilege of conducting business in Oklahoma. Lakeland has provided evidence that it initiated communications with CRG, but the Court must consider not only the fact that such communications occurred but also the quality and content of those communications. Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1278 (10th Cir. 2005). The Court has reviewed the e-mails produced by Lakeland and there is no evidence that CRG was seeking to establish a contractual relationship with Lakeland. Instead, CRG had acquired properties at which Lakeland was providing copying services and Lakeland was demanding payment for copying services. Each of the e-mails sent by CRG to Lakeland was in response to a request for payment by Lakeland, except for an e-mail by CRG to Lakeland in which CRG asked Lakeland to retrieve its copiers on CRG's property. Dkt. # 22-8, at 3. CRG may have

9

become aware that Lakeland was located in Oklahoma when it sent two checks to Lakeland, but there is no evidence that CRG purposefully took any action with the intention of creating a contractual relationship with an Oklahoma business. The Court finds that it does not have specific personal jurisdiction over CRG and CRG should be dismissed as a party.[1]

**IT IS THEREFORE ORDERED** that Capital Resorts Group, LLC's Motion to Dismiss Claims for Lack of Personal Jurisdiction and Brief in Support Thereof (Dkt. # 19) is **granted**.

**DATED** this 7th day of December, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[1] The Court has concluded that CRG does not have sufficient minimum contacts with Oklahoma to support the exercise of personal jurisdiction over this defendant, and it is not necessary for the Court to consider whether traditional notions of fair play and substantial justice would be offended if CRG were required to defend against Lakeland's claims in Oklahoma. Soma Medical Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999).